**UNITED STATES v. WEBB.**

**Civ. No. 768.**

United States District Court
E. D. Tennessee, N. D.

June 28, 1950.

Otto T. Ault, U. S. Atty., Chattanooga, Tenn., Ferdinand Powell, Jr., Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

Clyde W. Key, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This action, commenced pursuant to the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., by Paul A. Porter, Administrator, March 11, 1946, and now, after various orders of substitution, prosecuted by the United States, seeks recovery of treble damages for alleged violation of Revised Maximum Price Regulation 469 relative to the sale of live hogs during the period of January 3, 1945, to and including September 6, 1945, and an injunction to restrain further violations. The Government, however, concedes that an injunction would no longer be in order.

The Complaint alleges that defendant, during the litigated period, was "engaged in the business of buying and selling and offering for sale live hogs" and was "subject to the terms and provisions of said Act as amended and RMPR 469, as amended." Overcharges allegedly were made in the sale of live hogs to Lay Packing Company, Knoxville, Tennessee, in the sum of $12,-816.48, treble that sum being $38,449.44.

' Violations are denied, and in support of the denial defendant has presented in evidence the manner in which business was carried on between him and Lay Packing Company. A vice-president of Lay in his testimony referred to defendant and others similarly engaged, as "buyers" for the packing company. Defendant owned a truck, or trucks, and beginning about 1940 he was engaged by, or entered into an agreement with, the packing company for the purchase of live hogs for the company. He attended auction sales at stockyards in Middle Tennessee and Kentucky, ascertained the number and quality of hogs that were being offered for sale, contacted Lay by telephone for instructions as to how many of the hogs he should buy and the top price he could pay, and in accordance with those instructions made his purchases, never paying more than the Government ceiling price. He paid for the hogs from his own funds by weight at the stockyards, transported the hogs to Knoxville and unloaded them at Lay Packing Company's slaughter pens, where they were weighed a second time. Upon completion of delivery he received from the company the exact amount which he had paid from his own funds, plus a small sum per hundredweight, based upon the second weighing, as his compensation. That sum, called during the trial a "service charge," varied from 35¢ to 50¢ during the period following the year 1940 and for the time involved in this action. This was defendant's only compensation, and it was gross, nothing extra being allowed him for use of his trucks, operating costs, or other expenses. Such was the manner of dealing in March of 1942, before and after that date, as well as during the period in question.

Following some sort of communication from officials of the Office of Price Administration, defendant went to Nashville, Tennessee, for a conference with them. On that trip, which defendant testified occurred in 1944, he was given a letter from the District Price Attorney, which stated: "You are advised that your maximum price for this service is the highest price which you charged in March, 1942." The highest price defendant charged in March, 1942, is not in evidence, but it is in evidence that the sum, though normally 35¢, was a variable, depending, among other things, upon distances traveled and the degree of accessibility of places visited, the compensation, as heretofore observed, varying, during the period from 1940 to 1946 from the standard rate of 35¢ to 50¢ in exceptional cases. While the Court does not find it necessary to construe this letter as an agreement relieving defendant from the charge of violations, it could with reason be so construed, in view of the circumstances preceding and attending the writing.

After commencement of this action, defendant again went to Nashville, where he was told that his procedure was incorrect. He should, he was advised, make it more apparent that he was operating as the agent of Lay Packing Company. To that end, he should buy in Lay's name and write checks on Lay's account. Compliance with this advice involved nothing more than change in form. He was already known as a buyer for Lay. Instead of reimbursing defendant for his expenditures, Lay adopted the method of drawing its checks in favor of the sellers and paying defendant for his services by separate checks.

By application of April 9, 1946, and supplemental application of May 29, 1946, defendant requested of OPA authorization for 50¢ per hundredweight as the regular rate for his services to Lay. Authorization of that rate by letter of June 17, 1946, though subsequent to filing of the Complaint herein, has been construed by defendant as the Administrator's own interpretation of prior charges as legal. Whether this was a correct construction, the Court does not decide.

As to whether the relation of principal and agent existed between Lay and defendant, the proof on the surface is contradictory. By affidavit furnished OPA January 15, 1946, defendant stated: "In all of my dealings with the Lay Packing Company I was acting independently and was not in any way the agent, buyer or broker of the Lay Packing Company, either authorized or unauthorized." This affidavit, he testified, had been prepared in advance pre-

sumably by a representative of OPA and he signed it without reading it and after being told there was "nothing to it," except that it showed he was an independent buyer for Lay. Thurman Lay, vice-president of the company, testified that he supposed he could have rejected any load of hogs brought to the company by defendant, although he did not reject any. In his printed business forms defendant described himself as a "dealer in livestock," and there is evidence that as to some of his transactions he was an independent dealer, that is, a buyer and seller of hogs and other livestock purely on his own account.

The Court does not deem it necessary further to review the evidence, none of which materially changes the picture already presented. From all of the evidence, the Court finds as a fact that there has been no violation.

Revised Maximum Price Regulation 469 relates to dealers in live hogs, and a dealer is defined as "a person who has a fixed place of business equipped with livestock scales and who buys live hogs from the producer elsewhere than at a public market and resells the hogs to a slaughterer." In some of his relations, defendant may have come within this definition, but this action is grounded solely upon his transactions with Lay Packing Company. What his status may have been with respect to other transactions does not determine his status with respect to Lay. As a buyer for Lay, he worked for a compensation. He bought what he was told to buy, and no more. He paid the price he was authorized to pay. He did not buy and sell for profit. He did not buy with the expectation that he would resell to Lay, but with the understanding that he was buying for Lay and would be reimbursed by Lay. The testimony of Mr. Lay that he could have rejected any load of hogs brought to him by defendant was only a conclusion; a legal test of what he could have done might well have proved the contrary. As to whether defendant's true status was that of agent, the Court does not consider it necessary to decide. The case against him fails because, as to the trans-

actions complained of, he was not a dealer within the meaning, hence was not a violator, of the cited Regulation.

Accordingly, let an order be prepared, dismissing the action.